**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,  )
                           )
         Plaintiff,        )
                           )
    v.                     )   Case No. 03-20051
                           )            08-2295
CARLOS PORTILLO-QUEZADA,   )
                           )
         Defendant.        )
                           )

**MEMORANDUM AND ORDER**

Defendant Carlos Portillo-Quezada was convicted by a jury of three methamphetamine counts (distribution, possession with the intent to distribute, and conspiracy to distribute) along with one count of possession of a firearm during a drug trafficking crime. He was sentenced to life in prison for the conspiracy charge, 480 months for distribution and possession with intent to distribute, and 60 months, to run consecutive to the other sentences, for possession of a firearm.

Mr. Portillo-Quezada appealed to the Tenth Circuit, which affirmed his conviction and sentence. *United States v. Portillo-Quezada*, 469 F.3d 1345 (10th Cir. 2006). He has now filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. 509). For the reasons set forth below, that motion is denied.

**1.  Standard of Review**

Section 2255 entitles a prisoner to relief "[i]f the court finds that the judgment

was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. The court must hold an evidentiary hearing on a section 2255 motion "'[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (quoting § 2255). A court need not grant an evidentiary hearing where the factual allegations are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also United States v. Sanchez*, No. 96-7039, 1997 WL 8842, *3 (10th Cir. 1997) ("[D]efendant's conclusory allegations . . . which contradict the record made at the plea hearing, were insufficient to require an evidentiary hearing.").

**2. Discussion**

Mr. Portillo-Quezada's motion raises ten ineffective assistance of counsel claims. Specifically, Mr. Portillo-Quezada asserts that his trial attorney was ineffective because he: (1) failed to object to co-defendants being dressed in prison clothes; (2) failed to renew an objection to the prosecutor's statements profiling drug dealers; (3) failed to object to the introduction of homicide evidence; (4) failed to investigate a note that a witness had testified falsely; (5) failed to object to a display of a firearm; (6) failed to

object when a co-defendant's attorney commented in closing argument about Mr. Portillo-Quezada's decision not to testify; (7) called a witness who implied that Mr. Portillo-Quezada was an illegal alien; (8) failed to object to witness testimony that Mr. Portillo-Quezada entered the country illegally; (9) failed to investigate leniency given to a witness in exchange for testimony; and (10) elicited testimony suggesting that Mr. Portillo-Quezada was an illegal alien.

To obtain relief under § 2255 on the grounds of ineffective assistance of counsel, a petitioner must establish that his lawyer's performance was deficient as compared to an objective standard of reasonable performance. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). "In applying this test, we give considerable deference to an attorney's strategic decisions and 'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690). As the one raising the challenge, the petitioner "bears the burden of establishing that his trial counsel 'made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Sallahdin v. Mullin*, 380 F.3d 1242, 1247-48 (10th Cir. 2004) (quoting *Strickland*, 466 U.S. at 687).

The petitioner must also prove that counsel's deficient performance prejudiced his defense, "depriving him of a fair trial with a reliable result." *United States v. Orange*, 447 F.3d 792, 796 (10th Cir. 2006) (citing *Strickland*, 466 U.S. at 687). Thus, to satisfy

the prejudice prong, the petitioner must show that there is a reasonable probability that but for counsel's alleged errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Because the petitioner "must demonstrate both *Strickland* prongs to establish his claim, a failure to prove either one is dispositive." *Orange*, 447 F.3d at 796-97 (citing *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000)). "The performance component need not be addressed first." *Smith*, 528 U.S. at 286 n.14. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697; *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

A. Ground 1 – Prison Attire

On appeal, Mr. Portillo-Quezada argued that this court erred in allowing voir dire to proceed with his co-defendants in prison clothing. The Tenth Circuit concluded otherwise because Mr. Portillo-Quezada "invited" any such error by voluntarily agreeing to proceed without objection. Mr. Portillo-Quezada now asserts that his attorney was ineffective for failing to object that his two co-defendants were wearing prison attire during voir dire.

"It is well-settled that defendants who are compelled to appear before the jury in handcuffs, shackles or prison attire suffer prejudice which unconstitutionally undermines the presumption of innocence." *Portillo-Quezada*, 469 F.3d at 1350. In *Estelle v.*

*Williams*, the Supreme Court found that due process was compromised by "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire." 425 U.S. 501, 504-05 (1976).

Here, however, it was Mr. Portillo-Quezada's co-defendants who wore prison clothing while Mr. Portillo-Quezada remained in civilian attire. *Estelle* does not extend to co-defendants wearing prison attire, and Mr. Portillo-Quezada has identified no authority supporting his ineffective-assistance claim on this point. Instead, he cites to cases discussing the potential disadvantages to trying multiple defendants in one trial. That is an entirely separate issue. On the point of co-defendants in prison clothing, Mr. Portillo-Quezada has marshaled no case law supporting his claim that his attorney's failure to object was inherently prejudicial to him.

Moreover, as the Tenth Circuit noted on direct appeal, even if the presence of co-defendants in prison clothing was prejudicial to Mr. Portillo-Quezada, this court dispelled those concerns by "poll[ing] the jury and creat[ing] a record showing the jury was uninfluenced by seeing [Mr. Portillo-Quezada's co-defendants] in prison clothing." *Portillo-Quezada*, 469 F.3d at 1350.

Thus, Mr. Portillo-Quezada cannot satisfy the *Strickland* standard on this issue.

B.     Ground 2 – Profiling Statements

Mr. Portillo-Quezada maintains that his attorney was ineffective for failing to renew an objection to statements made by the prosecutor during voir dire. Specifically, the prosecutor commented during voir dire that "many of us have in our minds what the

5

picture of a criminal is. They have big tattoos and guns and etc., and we expect them to have long hair, and they wear biker jackets and that kind of thing." Attorneys for all three defendants objected and moved for a mistrial. This court denied the request for a mistrial, but ordered the prosecutor to make a curative statement and then also offered the court's own cautionary instruction concerning profiling drug dealers on the basis of physical appearance.

Mr. Portillo-Quezada again challenged the prosecutor's statements on direct appeal, arguing that the district court should have declared a mistrial. The Tenth Circuit concluded that the statements did not unconstitutionally prejudice Mr. Portillo-Quezada's right to a fair trial. *Portillo-Quezada*, 469 F.3d at 1351-52.

Now, in his § 2255, Mr. Portillo-Quezada asserts that his attorney was ineffective because he should have renewed his objection and request for a mistrial. Given the Tenth Circuit's resolution of the issue—that the statements did not prejudice Mr. Portillo-Quezada's trial—the failure of Mr. Portillo-Quezada to file a second motion for a mistrial also did not cause Mr. Portillo-Quezada any prejudice. As such, it cannot serve as the basis for § 2255 relief.

C. Ground 3 – Homicide Evidence

Mr. Portillo-Quezada argues that his attorney was ineffective for failing to object to testimony the prosecutor elicited concerning a homicide. Mr. Portillo-Quezada challenged the admission of this evidence on direct appeal, specifically asserting that this court erred in denying his motion for a mistrial. The Tenth Circuit disagreed, concluding

6

that the evidence was admissible, was not barred by Rule 404(b), and was not unduly prejudicial. *Portillo-Quezada*, 469 F.3d at 1353-54.

Mr. Portillo-Quezada appears to be arguing that his attorney should have sought a mistrial immediately after the homicide testimony was given, rather than waiting until the close of the Government's case. This argument seems to stem from the Tenth Circuit's note that

> Portillo-Quezada did not object to Cosgrove's testimony until after the government had concluded its direct examination. Although counsel objected that the testimony exceeded the court's order in limine, he did not ask for a mistrial at the time, nor did he move to strike the testimony or suggest a curative instruction. Portillo-Quezada eventually moved for a mistrial at the close of the government's case.

*Portillo-Quezada*, 469 F.3d at 1353. But nothing in the Tenth Circuit's opinion suggests that the failure to object immediately after the evidence was elicited influenced that court's resolution of the substance of Mr. Portillo-Quezada's complaint. Additionally, there is no evidence that this court denied the mistrial because of a lack of contemporaneous objection. Indeed, that was not the case.

Thus, in light of the Tenth Circuit's substantive ruling on the evidence's admissibility, Mr. Portillo-Quezada's attorney was not ineffective for failing to object earlier.

D.   Ground 4 – Note about Witness Credibility

Mr. Portillo-Quezada contends that his attorney should have investigated a note concerning a witness who testified falsely at trial. According to Mr. Portillo-Quezada,

7

Robert Whisenant was a cellmate with Luis Arellano, who testified against Mr. Portillo-Quezada at trial. Mr. Whisenant wrote a note explaining that Mr. Arellano confided that he had lied on the witness stand about drug quantities and sales and about an alleged homicide. According to Mr. Portillo-Quezada's § 2255 motion, Mr. Whisenant gave that note, attached as Exhibit 1, to Mr. Portillo-Quezada. And Mr. Portillo-Quezada now contends that his attorney was ineffective for failing to investigate Mr. Arellano's credibility.

Notably absent from Mr. Portillo-Quezada's motion, however, is any assertion that he actually gave that note to his attorneys. Indeed, the Government attached to its response an affidavit from one of Mr. Portillo-Quezada's trial attorneys, averring that no such note or reference to any communication was found in the case files at the public defender's office. Moreover, the attorney asserted that he had no recollection of any reference or suggestion that Mr. Arellano had testified falsely. In light of this affidavit, the court cannot say that Mr. Portillo-Quezada's attorneys acted ineffectively for failing to investigate information they did not have.

In reply, Mr. Portillo-Quezada attached an affidavit from his mother Maria Gomez, asserting that she attempted to deliver a handwritten note that had Robert Whisenant's name on it to Mr. Portillo-Quezada's attorneys but that they refused to accept the note. Mr. Portillo-Quezada offers no argument, and the court can find none,

that the act of refusing to accept a handwritten note at some unspecified date[1] is constitutionally ineffective.

Thus, this claim cannot justify habeas relief.

E.    Ground 5 – Weapon Exhibit

Mr. Portillo-Quezada asserts that his attorney was ineffective for failing to object when the prosecutor displayed to the jury a firearm that was not the exact firearm allegedly used for the homicide. A Government witness testified about an assault rifle that was found in Mr. Portillo-Quezada's vehicle following the execution of a search warrant. That rifle was admitted into evidence. But it was not the rifle used in the homicide. Mr. Portillo-Quezada's attorney objected to the admission of that weapon into evidence based on Rule 401 and Rule 403, but those objections were overruled.

Mr. Portillo-Quezada seems to be arguing that his attorney should have objected earlier, prior to the gun being formally offered into evidence, when the prosecutor first held up the weapon. He cites as authority *United States v. Adkins*, where the court found no error in admitting into evidence a weapon similar to one that was the subject of the case. 196 F.3d 1112, 1117 (10th Cir. 1999), *overruled on other grounds by Chambers v. United States*, 129 S. Ct. 687 (2009). Mr. Portillo-Quezada finds significant that in *Adkins*, the government witness made clear that the firearm in the courtroom was not the

---

[1] The Government suggests, based on information in the note that Mr. Whisenant would not have known until a later date, that the earliest the note could have been written is three months after trial. Mr. Portillo-Quezada does not dispute that analysis.

9

one alleged to have been used by the defendant.

*Adkins* offers little support for Mr. Portillo-Quezada's claims because it involved a replica weapon—and in fact, one that was slightly different that the actual weapon—of that used in the crime. Here, however, the gun admitted into evidence was in fact the actual gun recovered from Mr. Portillo-Quezada's vehicle, just not the one used in the homicide. Moreover, Mr. Portillo-Quezada's attorney objected to the admission of the gun, and then after it was admitted into evidence, he himself elicited testimony from the witness that the gun was not the one used in the alleged homicide.

As such, Mr. Portillo-Quezada's attorney was not ineffective.

F.     Ground 6 – Comment on Silence

Mr. Portillo-Quezada contends that his attorney was ineffective for failing to object when a co-defendant's attorney referenced in his closing argument Mr. Portillo-Quezada's failure to testify at trial.

The Supreme Court has cautioned that it is a violation of the Fifth and Fourteenth Amendments for a prosecutor to comment to the jury upon the defendant's decision not to testify. *Griffin v. California*, 380 U.S. 609, 612-13 (1965). Assuming that a co-defendant's attorney can similarly violate a defendant's Fifth Amendment right—a proposition for which Mr. Portillo-Quezada offers no authority—the analysis for determining if a comment was improper would likely be the same:

> the test is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.

10

*Knowles v. United States*, 224 F.2d 168, 170 (10th Cir. 1955).

Here, a co-defendant's attorney made the following comment during closing argument: "You know, Carlos [Portillo-Quezada], I guess, according to the hearsay that – the coconspirator statements that he heard in this case, claimed to have killed Andrews. Let me ask you this –" At which point Mr. Portillo-Quezada's attorney objected, arguing that the jury would have to determine the evidence. The court overruled the objection, explaining that "[a]ll [the closing attorney] said was according to some of the coconspirator hearsay testimony Mr. Portillo-Quezada claimed to have killed Andrews. That is consistent with some of the evidence in the case." Mr. Portillo-Quezada's attorney noted that he had misheard the closing attorney's remarks. (Doc. 371, p. 219-20.)

The closing attorney then continued: "I'm sorry. I didn't mean to say that Carlos himself said anything because Carlos didn't testify." He then went on to list fifteen or so people who might have had information to contribute but who were not called by the Government to testify. And he concluded the discussion by noting that "if they had any evidence that could have supported their case, it's the government's obligation to produce." (Doc. 371, p. 220.)

It's clear from this exchange that the co-defendant's attorney's reference to Mr. Portillo-Quezada's silence was merely clarifying his explanation of the evidence—that according to the Government, Mr. Portillo-Quezada had said certain things, not that Mr. Portillo-Quezada had admitted as such in court. Given the context, it cannot be said that

11

this passing statement was of "such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. McClure*, 734 F.2d 484, 491 (10th Cir. 1984) (quoting *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir. 1955)).

Accordingly, Mr. Portillo-Quezada's attorney was not ineffective for failing to object or request a mistrial based on the comment.

G. Grounds 7, 8, and 10

In three separate claims, Mr. Portillo-Quezada asserts that his attorney was ineffective for allowing, failing to object to, or even eliciting evidence suggesting that Mr. Portillo-Quezada was an illegal alien. Specifically, in Ground 7, Mr. Portillo-Quezada maintains that his attorney was ineffective for calling a witness who testified that Mr. Portillo-Quezada had used a false name in one employment setting. Thus, Mr. Portillo-Quezada argues, the jury likely inferred he was an illegal alien. In Ground 8, Mr. Portillo-Quezada argues that his attorney was ineffective for failing to object when a witness testified at trial that Mr. Portillo-Quezada had been deported and then re-entered the country illegally. And in Ground 10, Mr. Portillo-Quezada contends that his attorney was ineffective for eliciting testimony of a Government witness suggesting that Mr. Portillo-Quezada was an illegal alien.

In support of these arguments, Mr. Portillo-Quezada notes that sentencing a defendant more harshly because of his illegal alien status violates due process. *United States v. Garcia-Cardemas*, 242 Fed. App'x 579, 582 (10th Cir. 2007) (citing *United*

*States v. Onwuemene*, 933 F.2d 650, 651 (8th Cir. 1991), *United States v. Borrero-Isaza*, 887 F.2d 1349, 1352 (9th Cir. 1989), and *United States v. Gomez*, 797 F.2d 417, 419 (7th Cir. 1986)). And he asserts that the outcome of the trial would have been different had the jury not received the information about his illegal alien status.

But that irrelevant legal proposition combined with an unsupported conclusion is insufficient to demonstrate ineffective assistance, *United States v. Fisher*, 38 F.3d 1144, 1148 (10th Cir. 1994), particularly in light of the weight of the evidence at trial. Moreover, as the Government points out, an argument could be made that evidence about Mr. Portillo-Quezada's deportations to Mexico helped to establish and confirm the time line of drug trafficking activity.

Thus, these grounds do not warrant habeas relief.

H. Ground 9 – Leniency for Witness

Mr. Portillo-Quezada asserts that his attorney was ineffective for failing to investigate whether a witness had received leniency in a pending traffic case in exchange for his testimony against Mr. Portillo-Quezada.

One Government witness, Tommy Davidson, testified that he hoped the Government would help with approximately $2,600 in traffic fines in exchange for his testimony. He made clear, however, that the prosecutor had not promised anything and that to date, the Government had not given him any money. (Doc. 415, pp. 238-44.)

Mr. Portillo-Quezada asserts that his attorney should have challenged Mr. Davidson's credibility by investigating the claim that he did not receive the hoped-for

13

leniency in his traffic cases. But it is unclear why Mr. Portillo-Quezada's attorney would have done so. Any investigation into leniency for Mr. Davidson would have occurred after trial and it would not have changed the facts underlying his testimony at the time he gave it—that he hoped for leniency but that nothing had been promised or received. Moreover, Mr. Portillo-Quezada provides no information about what such an investigation would have uncovered or how it might have changed the outcome in his case.

Mr. Portillo-Quezada's attorney was not ineffective for failing to investigate this issue.

I.     Conclusion

Mr. Portillo-Quezada cannot satisfy the *Strickland* standard for ineffective assistance of counsel and he is therefore not entitled to habeas relief.

**3.     Certificate of Appealability**

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).[2] To satisfy this standard, the movant must demonstrate

---

[2] The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

14

that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)). For the reasons stated above, Mr. Portillo-Quezada has not made a substantial showing of the denial of a constitutional right. The court therefore denies a certificate of appealability as to its ruling on defendant's § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion pursuant to § 2255 (doc. 509) is denied.

**IT IS SO ORDERED** this 26th day of July, 2010.

>s/ John W. Lungstrum
>John W. Lungstrum
>United States District Judge